(No. 31697.

THOMAS J. KELLY *et al.*, Appellees, *vs.* CHICAGO PARK DISTRICT, Appellant.

*Opinion filed March 22, 1951—Rehearing denied May 21, 1951.*

PHILIP A. LOZOWICK, of Chicago, (MARTIN G. LOEFF, of counsel,) for appellant.

MICHAEL F. RYAN, of CHICAGO, (RICHARD F. Mc-PARTLIN, JR., and MARTIN J. McNALLY, of counsel,) for appellees.

JOHN J. MORTIMER, Acting Corporation Counsel, of Chicago, (L. LOUIS KARTON, and JAMES B. PARSONS, of counsel,) for the city of Chicago, *amicus curiae*.

Mr. JUSTICE DAILY delivered the opinion of the court:

This case originated with a suit filed in the circuit court of Cook County by seventeen Chicago Park District employees who sought compensation from the park district for a period covering about seven and one-half years, during which they were wrongfully excluded from their respective positions as civil service employees. The trial court entered judgment for the plaintiffs in lesser amounts than claimed, whereupon both plaintiffs and defendant took an appeal to the Appellate Court for the First District. The latter court held that the plaintiffs were entitled to the full amounts claimed, with some minor exceptions, reversed the judgment of the circuit court and remanded the cause. Upon

leave granted, the defendant has perfected an appeal to this court from the judgment of the Appellate Court.

The present litigation is an outgrowth of the consolidation, on May 1, 1934, of twenty-two park districts in the city of Chicago into one district, *viz.*, the Chicago Park District, the defendant in this case. At the time of consolidation, nineteen of the districts, referred to generally as the "small park districts," did not operate under the provisions of the Park Civil Service Act of 1911. (Ill. Rev. Stat. 1933, chap. 24½, par. 78 *et seq.*; Laws of 1911, p. 211, as amended.) The remaining three districts known as the "large park districts" operated under that act. By the provisions of section 14 of the Chicago Park District Act, (Ill. Rev. Stat. 1933, chap. 105, par. 333.14,) said act being the authority under which the consolidation was accomplished, the Park Civil Service Act was to apply to the Chicago Park District.

At the time of the consolidation the plaintiffs were employees of the non-civil-service park districts. The commissioners and civil service board of the Chicago Park District, soon after the commencement of their administration on May 1, 1934, concluded that the provisions of section 14 of the Chicago Park District Act did not evince a legislative intent that the employees of the small park districts should, subsequent to the consolidation, enjoy civil service status. The opinion of this court upholding the validity of the Chicago Park District Act became final on October 11, 1934, (*People* v. *Kelly,* 357 Ill. 408,) and at various times during the month of November, 1934, the plaintiffs were separated from their positions with the defendant. In December, 1935, plaintiffs instituted a *mandamus* proceeding in the superior court of Cook County to secure the writ necessary to restore them to their positions. The trial court refused to award the writ, but the Appellate Court, in *People ex rel. Kelly* v. *Dunham,* 313 Ill. App. 18, (leave to appeal denied, 316 Ill. App. XIV,) reversed that court

and remanded with the direction that the writ issue. That appeal was not heard by the Appellate Court until the October term, 1938; the opinion was filed January 19, 1942, and became final when leave to appeal was denied by this court on June 10, 1942. In obedience to the mandate of the Appellate Court, the superior court entered a judgment order on June 30, 1942, and the plaintiffs were sent notices of certification and appointment as civil service employees. All but one reported for certification and appointment and were placed in employment on or about July 16, 1942.

Thereafter, in September, 1942, three months after the prolonged *mandamus* proceeding had culminated in a final and successful judgment, plaintiffs brought the action which generates this appeal. By it they sought to recover from the defendant salaries aggregating approximately $279,000 for the varying periods they were wrongfully excluded from their respective positions from November, 1934, when they were released, to July, 1942, when they were restored to duty. The judgment of the circuit court only awarded compensation for the period from January 19, 1942, the date when the decision of the Appellate Court reversed the trial court, to the date of the actual reinstatement of each plaintiff in July, 1942. On appeal by the plaintiffs, and cross appeal by the defendant, the Appellate Court reversed the judgment of the circuit court and remanded the cause. (*Kelly* v. *Chicago Park District,* 341 Ill. App. 37.) The Appellate Court was of the opinion that each plaintiff was entitled to the amount he claimed, except in those instances where a plaintiff had, during the period for which compensation was claimed, worked temporarily for the defendant in a capacity other than the one claimed to be his regular one. Compensation so earned was deducted. The total amount ordered to be paid by the defendant to the plaintiffs totalled $279,436.72. We have granted the defendant's petition for leave to appeal, for a further review of the matter.

Throughout this litigation, the defendant has contended that the plaintiffs' salary claims are barred by the five-year Statute of Limitations. (Ill. Rev. Stat. 1949, chap. 83, par. 16.) It is urged that the plaintiffs' *mandamus* proceeding, by which they sought to compel their recognition and reinstatement as civil service employees, and the present proceeding to recover salaries, are but two different types of remedy for the same cause of action and that the statute began to run against the salary claims when the right to pursue the earlier remedy of *mandamus* accrued. In arriving at such a conclusion defendant relies largely on several cases in which this court has held that civil service reinstatement and recovery of salary may be accomplished in one proceeding. (*People ex rel. Blachly* v. *Coffin,* 279 Ill. 401; *People ex rel. Sellers* v. *Brady,* 262 Ill. 578; *People ex rel. McDonnell* v. *Thompson,* 316 Ill. 11.) We believe that defendant has incorrectly interpreted the right to join a prayer for salary with a prayer for reinstatement as creating an independent and immediately enforceable cause of action for salary. The cause of action for salaries could not accrue to plaintiffs until their rights to their respective positions were first determined. This was the holding of this court in *Kreitz* v. *Behrensmeyer,* 149 Ill. 496. Defendant points out that there are many factual differences between the *Kreitz case* and the present one, and seeks to distinguish it chiefly on the ground that, the right to office being determined, there was an elective office rather than a civil service position. We believe the distinction made is without force, for whether it be an elective office or an appointive position, establishing the right to the office or position must be a condition precedent to the right to salary, and until the former right is established no cause of action for salary can accrue. Where a party's success in one action is a prerequisite to his right to maintain a new action, the Statute of Limitations does not begin to run as to the new action until the determination of the pending suit,

which decides whether the new right exists. (54 C.J.S. 15, sec. 110b; *City of Phoenix* v. *Sittenfeld,* 88 Pac. 2d 83.) Since the plaintiffs' reinstatement suit, in the instant case, was not finally disposed of until June 30, 1942, the suit for salaries filed in September, 1942, was well within the five-year period of limitation.

In determining that plaintiffs were entitled to their salaries for the period they were wrongfully prevented from working, the Appellate Court followed the familiar rule of law pertaining to public officers, which recognizes that if one is lawfully entitled to a public office the right to salary attaches to the office and that it may be recovered in full, irrespective of any service rendered and without regard to the fact that he may have earned money elsewhere in private employment. While the rule undoubtedly applies to the holders of public office, we think the Appellate Court erred in extending the rule to the plaintiffs in this case. As a general proposition, this State, including others where the question has arisen, has rejected the idea of classifying all civil service employees as officers. (*People ex rel. Dunderdale* v. *City of Chicago,* 327 Ill. 62; *State* v. *City of Miami,* 13 So. 2d 707; *Corfman* v. *McDevitt,* 142 Pac. 2d 383; *Gutheil* v. *City of New York,* 103 N.Y.S. 972; *Sutliffe* v. *City of New York,* 117 N.Y.S. 813; *LaChicotti* v. *City of New York,* 151 N.Y.S. 566.) Likewise, this court has made and explained the distinction between an "office," a "position" and a "place of employment." (*People ex rel. Jacobs* v. *Coffin,* 282 Ill. 599.) Thirteen of the plaintiffs in this cause seek salaries for the "position" of patrolman, one for the "position" of sergeant, one for the "position" of lieutenant, and the remaining two seek compensation for the "positions" of head attendant and attendant.

We pointed out in *Moon* v. *The Mayor,* 214 Ill. 40, and again in *Krawiec* v. *Industrial Com.* 372 Ill. 560, that at common law a policeman was not an officer, and that the

office exists only when created by statute or municipal ordinance. No such ordinance or statute has been alleged or proved in the instant proceeding. It is noteworthy, too, that plaintiffs' pleadings throughout this litigation have described their employment as being a position. They do not allege that they held an office nor do they allege the creation of an office. Certainly a "head attendant" and an "attendant" in a park are not officers within the generally accepted legal definition of the term. Nor do we find that those of the plaintiffs who hold police positions, have alleged or proved that they hold offices created by ordinance or statute, and certainly they do not sue as officers. The combination of plaintiffs here illustrates the impracticability of attempting to distinguish, among the great body of those who are civil service employees, between those who are officers and those who are mere employees, in order to treat them differently in their problems of compensation. It is our belief that none of the plaintiffs in this case fall in the category of officers as defined and contemplated by law, and that the rules of compensation applicable to public officers do not apply.

While we concede that the plaintiffs, as holders of civil service positions, are entitled to their salaries for the period during which they were illegally prevented from performing their duties, (*People ex rel. Polen* v. *Hoehler*, 405 Ill. 322; *People* v. *Brady*, 262 Ill. 578,) the inapplicability of the rule relating to public officers assumes new importance when considering the Appellate Court's finding that plaintiffs' claims for salaries could not be reduced by earnings from outside employment. In their argument on this point plaintiffs again rely on those cases relating to the earnings of public officers, and which we have already determined are inapplicable to these plaintiffs. In addition they advance the argument that the rules relating to the mitigation and reduction of damages are not applicable, because their salaries are fixed by law and not by contract, and that there

being no contract there can be no damages for its breach, thus giving no occasion for the application of the offset rule. This was the contention made in the case of *State* v. *City of Miami*, 13 So. 2d 707, where the salary claimant was considered to be an employee rather than an officer. The court said: "The principle of 'avoidable consequences' upon which the reduction of damages rule is grounded is not confined entirely to the narrow limits suggested by the appellant. It finds its application in virtually every type of case in which the recovery of a money judgment or award is authorized. (Sedgwick on Damages, 9th ed., sec. 204, p. 390; 15 Am. Jur., sec. 27, p. 420; 25 C.J.S., Damages, sec. 33, p. 499.) It addresses itself to the equity of the law that a plaintiff should not recover for those consequences of defendant's act which were readily avoidable by the plaintiff. Sutherland on Damages, (1844) vol. 1, p. 226, et. seq." Again repeating that we consider inapplicable the authorities cited by plaintiffs relating to public officers, we too, as the authorities cited above, are unwilling to confine the principle of unavoidable consequences to the limited application to contract actions suggested by the plaintiffs. While plaintiffs' right of compensation does not grow out of a contractual relation, it does, unlike that of an officer, grow out of a rendition of services. We see no basis for a finding that plaintiffs are entitled to be paid for their services twice, when none were rendered. It is our view that the Appellate Court erroneously held that plaintiffs' salaries could not be reduced by earnings from outside employment.

Defendant also contends in this court, as it did in the Appellate Court, that the plaintiffs failed to allege or prove the legal existence of the positions claimed by them; that plaintiffs' claims are barred by the fact that other persons were employed in their positions in question and were compensated therefor; that the period of recovery should be limited to the period subsequent to the judgment of the

Appellate Court on January 19, 1942; and that the recovery should be limited to the minimum rate of salary. Our examination of the authorities cited and the arguments made in this court have not led us to deviate from the Appellate Court's finding on, or treatment of, the points raised, nor to see the necessity for further discussion of them.

For the reasons stated, the judgment of the Appellate Court is reversed and the cause remanded to the circuit court of Cook County, with directions to enter a judgment consistent with the findings of this opinion.

*Reversed and remanded, with directions.*